## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

PHILLIP A. SEAVEY,             )
                                      )
Plaintiff,                    )
                                      )
v.                              )
                                      )     Case No. 2:16-CV-00063-SPM
                                      )
                                      )
NANCY A. BERRYHILL,[1]      )
Acting Commissioner of Social Security,   )
                                      )
Defendant.                  )

## <u>MEMORANDUM OPINION</u>

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the final decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying the application of Plaintiff Phillip A. Seavey ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 16). Because I find substantial evidence to support the decision denying benefits, I will affirm the Commissioner's denial of Plaintiff's application.

### I.    BACKGROUND

On February 28, 2013, Plaintiff applied for DIB, alleging that he has been unable to work since Oct. 3, 2012. (Tr. 12). His application was initially denied on April 19, 2013. *Id.* Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"). *Id.* On March 27, 2015,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

following a hearing, the ALJ found Plaintiff was not under a "disability" as defined in the Act. *Id*. Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Doc. 34 at 1). On May 7, 2016, the Appeals Council declined to review the case. *Id*. Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

The facts related to the issues raised by Plaintiff will be addressed as needed in the discussion below.

## II. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the

claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, October 3, 2012; that Plaintiff has the severe impairments of degenerative disc disease, hypertension, anxiety, depression, and degenerative joint disease; and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 14-15). The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), except that he can never perform overhead work with the left upper extremity; can perform frequent, but not constant, reaching or grasping with the non-dominant left upper extremity; can only occasionally stoop, kneel, crouch, or crawl; would be limited to simple routine tasks; can have only occasional contact with the general public and coworkers; and can have only occasional changes in a routine work setting. (Tr. 17). The ALJ found that Plaintiff is unable to perform any of his past relevant work. (Tr. 23). However, relying on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff would be able to perform occupations including housekeeping (Dictionary of

Occupational Titles ("DOT") No. 323.687-014, light exertion level, unskilled, 371,370 jobs in the national economy), routing clerk (DOT No. 222.687-022, light exertion level, 74,788 jobs in the national economy); and folding material operator (DOT No. 208.685-014, light exertion level, 119,960 jobs in the national economy). (Tr. 24). The ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from October 3, 2012, through the date of his decision. (Tr. 25).

## IV. DISCUSSION

Plaintiff challenges the ALJ's decision on three grounds: (1) that the ALJ's RFC finding is too vague to allow meaningful review or to satisfy the specificity required by regulation and policy, because the ALJ limited Plaintiff to "light work" instead of conducting a function-by-function analysis; (2) that the ALJ erred in evaluating the medical source opinions in assessing his physical RFC; and (3) that the ALJ erred in evaluating the medical source opinions in assessing his mental RFC.

### A.  Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the

evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## B.  The RFC Limitation to "Light Work"

Plaintiff's first argument is that the ALJ's RFC finding is too vague to allow meaningful review or to satisfy the specificity required by regulation and policy, in that the ALJ described Plaintiff's RFC as "light work" instead of making specific function-by-function findings as to Plaintiff's physical abilities to walk, sit, stand, push, and pull.  (Doc. 33 at 2-3).

A claimant's RFC is "the most a claimant can do despite her limitations." *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)).  "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

In this case, the ALJ made the following findings regarding Plaintiff's RFC:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can perform no overhead work with the left upper extremity; can perform frequent reaching, or grasping with the non-dominant left upper extremity, but not constant; can occasionally stoop, kneel, crouch, or crawl; would be limited to simple routine tasks; can have only occasional contact with the general public and coworkers; and can have only occasional changes in a routine work setting.

(Tr. 17). Similarly, in the hypothetical question posed to the VE, the ALJ described an individual who could perform "light work activity" with additional limitations, but did not include specific walking, sitting, standing, pushing, or pulling limitations.

As Plaintiff points out, Social Security Ruling SSR 96-8p states:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The functions described in the referenced regulations include physical functions such as sitting, standing, walking, pushing, and pulling, as well as mental functions and ability to deal with environmental conditions. *See* 20 C.F.R. §§ 404.1545.

Plaintiff argues that remand is required because the ALJ failed to conduct the function-by-function analysis required by SSR 96-8p before finding him capable of "light work." He argues that the ALJ should have provided specific details about Plaintiff's capacity to sit, stand, walk, push, and pull. Plaintiff argues that this is problematic because the ALJ found that he could do "light" work, and there are a variety of combinations of functional limitations that might permit a person to perform "light" work. "Light work" is defined in the regulations as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) & 416.967(b).[2] Plaintiff argues that because of the different activities that might constitute "light work," it is unclear what specific activities the ALJ found Plaintiff was capable of performing.

In *Depover v. Barnhart*, 349 F.3d 563 (2003), the Eighth Circuit considered a similar situation in which the ALJ's RFC finding did not address Plaintiff's ability to sit, stand, or walk, but did include limitations on Plaintiff's ability to lift, carry, bend, stoop, squat, kneel, crawl, climb, and work around moving machinery and heights. *Id.* at 567. The Eighth Circuit stated, "although we would have preferred that he had made specific findings as to sitting, standing, and walking, we do not believe that he overlooked those functions." *Id.* The court noted that "all of the functions that the ALJ specifically addressed in the RFC were those in which he found a limitation, thus giving us some reason to believe that those functions that he omitted were those that were not limited"; that the ALJ had asked an alternative hypothetical question that did include limitations on sitting, standing, and walking; and that the ALJ had noted in his decision the plaintiff's testimony about his inability to stand. *Id.* The court concluded, "[W]e believe that

---

[2] Similarly, the DOT defines light work as follows:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

the ALJ implicitly found that Mr. Depover was not limited in these functions, and in this instance we do not see any reason to remand to make the findings explicit." *Id.* at 567-68.

In addition, several district courts within the Eighth Circuit have found no reversible error in situations similar to the one here, in which the ALJ expressed the plaintiff's RFC and/or the hypothetical question to the VE in terms of "light work" without setting forth specific functional limitations in walking, sitting, standing, pushing, or pulling, but did include some other physical limitations. *See Linze v. Colvin*, No. 4:12-CV-1113-CDP, 2013 WL 5442766, at *6 (E.D. Mo. Sept. 30, 2013) (rejecting the plaintiff's argument that the ALJ's hypothetical question was incomplete because it described an individual capable of performing "the full range of light work"; stating, "The ALJ described an individual who could do light work in his hypothetical question and, so, provided a functional assessment of Linze's abilities. The vocational expert's answer to that question supplies substantial evidence to support the ALJ's finding that Linze could return to her past relevant work.") (citing *Depover*, 349 F.3d at 568); *Biggs v. Astrue*, Civ. No. 11-3066, 2012 WL 3637642, at *1, *8 (W.D. Ark. Aug. 23, 2012) (rejecting the plaintiff's argument that remand was required based on a violation of SSR 96-8p where the ALJ determined that the plaintiff retained the RFC to perform "light work" but did not make specific findings with regard to sitting, standing, walking, or lifting; noting that light work is defined in the regulations and that the ALJ had made additional findings with regard to the plaintiff's limitations in areas such as climbing, stooping, bending, and crouching); *Arant v. Astrue*, No. 5:11-6004-DGK-SSA, 2012 WL 1067740, at *3-*4 (W.D. Mo. Mar. 29, 2012) (rejecting the plaintiff's argument that remand was required because the ALJ's RFC was expressed in terms of "light work as defined in 20 C.F.R. § 416.967(b)" and did not specify maximum capabilities of sitting, standing, or walking; finding that the RFC finding was not vague or contrary to the

requirements of SSR 96-8p); *Rogalaski v. Astrue*, No. 4:10 CV 2391 DDN, 2011 WL 5914017, at *9 (E.D. Mo. Nov. 28, 2011) (rejecting the plaintiff's argument that remand was required because the ALJ expressed the RFC determination in terms of the exertion required for "light" work, in violation of SSR 96-8p; stating that "[w]hile the ALJ did express plaintiff's RFC in terms of the 'light' exertional category, the ALJ also referred to the appropriate statutory definitions of 'light,' and specifically addressed plaintiff's ability to bend, stoop, crouch and crawl" and that the ALJ's RFC determination was "supported by a narrative discussion"); *Cook v. Astrue*, 629 F. Supp. 2d 925, 933 (W.D. Mo. 2009) (rejecting the argument that remand was required where the ALJ described Plaintiff's RFC in terms of "light work" without a function-by-function analysis; finding that "the ALJ's RFC of light work implicitly made findings as to claimant's ability to do work-related activities," noting that in the hypothetical posed to the VE, the ALJ described specific limitations on exposure to chemicals, ability to reach overhead with the left upper extremity, and need for low-stress tasks, and stating that "while it may be better practice to make specific objective physical characteristics findings in the ALJ's determination of RFC, a failure to do so is not reversible error when the ALJ has sufficiently developed the record as to Plaintiff's RFC" ).

The Court finds the reasoning of the above cases persuasive and applicable to this case. As in most of those cases, although the ALJ here did not specifically describe Plaintiff's ability to walk, sit, stand, push or pull, he did include specific limitations in several other physical functions, including the ability to perform overhead work; reach or grasp; and stoop, kneel, crouch, or crawl. Moreover, the ALJ asked the VE to explain how she considered Plaintiff's limitations in using his upper left extremity, and she explained that the DOT did not address overhead reaching or whether an individual can use one hand more easily than the other, so she

chose jobs that accommodated those limitations based on her own expertise. (Tr. 56). This indicates that the ALJ did not overlook the possibility that Plaintiff had more significant limitations than those required for a full range of light work. In addition, the ALJ conducted a detailed review of Plaintiff's allegations and the medical record, and offered several reasons why he found Plaintiff's allegations not credible, suggesting that he considered and rejected the possibility that Plaintiff had limitations more significant than those the ALJ specifically identified in the RFC and hypothetical question. The most reasonable reading of the ALJ's decision is that he found Plaintiff capable of performing the full range of light work, with the exception of the specific areas in which he found that Plaintiff had limitations. The hypothetical question posed to the VE accurately reflected that RFC finding. Although it would have been preferable for the ALJ to make specific findings about each physical function, the failure to do so in this case does not require reversal.

Additionally, the Court agrees with the Commissioner that the ALJ's finding that Plaintiff could perform all of the requirements of light work, except as indicated in his decision, is supported by substantial evidence. That includes evidence that he frequently reported to his treatment providers that he felt well with only minor complaints; that he often reported no pain in his back, neck or joints; that he did not regularly use pain medication, and never used other pain control methods; that he frequently walked for exercise; and that there were inconsistencies between Plaintiff's complaints of very significant limitations and his reported daily activities. (Tr. 17-21, 49-50, 290, 293, 303, 623-24, 664, 669-70, 673-76).

For all of the above reasons, the Court finds no reversible error with respect to the ALJ's failure to conduct a function-by-function analysis of Plaintiff's RFC.

## C. ALJ's Evaluation of Medical Opinions in Assessing Physical RFC

Plaintiff first argues that the ALJ erred in discounting the opinion of Dr. Robert Sparks, his treating physician, and alleges that the ALJ did not evaluate his opinion in the proper manner. (Doc. 33 at 7-8). Plaintiff alleges that the ALJ should have first determined whether his opinion deserved "controlling weight," before considering what lesser amount of weight should be accorded the opinion under 20 C.F.R. § 404.1527(c).[3] "Generally, [a] treating physician's opinion is due controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004). However, "[a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Skelton v. Colvin*, No. 1:14-CV-143-RLW, 2016 WL 320129, at *8 (E.D. Mo. Jan. 26, 2016) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir.2005) (internal quotation omitted); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010). It is true that the ALJ did not first explicitly state that Dr. Sparks' opinion did not deserve controlling weight before going on to expound upon why he accorded it lesser weight. However, such a conclusion is self-evident from the ALJ's decision. The ALJ was clear in that he gave little weight to Dr. Sparks' opinion because it conflicted with the contemporaneous medical records as well as other evidence in the record as a whole. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). A medical source opinion that is inconsistent with the objective medical evidence

---

[3]  The Court's references in this section are to the version of the regulations that was in effect as of the date of the ALJ's decision.

cannot be afforded controlling weight. *See* 20 C.F.R. § 404.1527(c)(2) (to be afforded controlling weight, a medical opinion must be from a treating physician, must be consistent with the record as a whole, and must be supported by the objective medical evidence). In finding that Dr. Sparks' opinion was unsupported by the objective evidence in the record as a whole, the ALJ implicitly found that his opinion could not be given controlling weight. While it would have been preferable for the ALJ to state this explicitly in his decision, failure to do so when it was otherwise clear does not require remand. *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (citing *Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996) ("Although specific articulation of credibility findings is preferable, [the Court] consider[s] the lack thereof to constitute a deficiency in opinion-writing that does not require reversal because the ultimate finding is supported by substantial evidence in the record.").

Furthermore, the Court finds that the ALJ properly determined that Dr. Sparks' opinion was unsupported by the objective medical evidence of record. Dr. Sparks opined that Plaintiff had been suffering from a debilitating degree of pain and a frequently debilitating degree of fatigue since March 2010. (Tr. 764-65). He further opined that Plaintiff could sit for only three hours, stand or walk for three hours, and would need to lie down for two hours during an eight hour workday. (Tr. 762). However, Dr. Spark's treatment notes do not support such restrictions. Dr. Sparks had been Plaintiff's treating physician since October 2010, and Plaintiff attended fourteen doctor's appointments with him between October 3, 2012 (the alleged date of onset of disability) and March 27, 2015 (the date of the ALJ's decision). At eight of those visits, Dr. Sparks' treatment notes indicated that Plaintiff reported feeling well with only minor complaints and good energy levels. (Tr. 290, 293, 303, 623, 629, 664, 669, 675). At nine appointments Plaintiff indicated that he was not experiencing any back or joint pain. (Tr. 301, 303, 624, 630,

635, 639, 644, 665, 670, 673, 676).  At eight appointments, Plaintiff indicated that he was not experiencing any neck pain.  (Tr. 290, 301, 303, 624, 635, 639, 670, 673).  Dr. Sparks did not prescribe pain medication for Plaintiff, and Plaintiff testified that he didn't regularly take pain medications because he was the kind of person who does "not like taking medicine," but that he occasionally takes a Tylenol if the pain is "real bad," which would seem to indicate that his pain levels were not as severe as alleged.  (Tr. 49-50).  Furthermore, and as noted by the ALJ, despite allegations of disabling pain, Plaintiff did not utilize other pain management therapies such as physical therapy, biofeedback, a TENS unit, morphine pump, acupuncture, or massage therapy. (Tr. 20).  The ALJ reasonably concluded that Dr. Sparks' opinion relied on Plaintiff's subjective reports rather than the objective medical evidence. (Tr. 22). *See Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014) (ALJ properly considered claimant's relative lack of medical care as relevant when considering claimant's allegations of unbearable pain); *see also Benskin v. Bowen*, 830 F.2d 878, 884 (8th Cir. 1987) (disabling pain not indicated when claimant merely took Advil and aspirin to relieve pain).  As noted *supra*, a treating physician's opinion is entitled to controlling weight only if it is not inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2).  "An ALJ may discount a treating source opinion that is unsupported by treatment notes."  *Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016) (internal citation omitted).

The Court also agrees with the ALJ's determination that Dr. Sparks' statements regarding Plaintiff's limitations were contradicted by Plaintiff's own statements regarding his activities of daily living. (Tr. 20, 22).  *See Whitman*, 762 F.3d at 706 (ALJ reasonably stated he discounted physician's opinion because the opinion was "more restrictive than self-reported activities"); *see also Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (fact that claimant "continues to engage in

many normal daily living activities including driving, shopping, [and] visiting with friends and relatives . . . supports finding of ability to work). For example, Plaintiff testified that on a normal day he would drive to the store to do some shopping, regularly took walks to get exercise, and frequently drove to visit with family. (Tr. 50). Plaintiff reported that his hobbies included camping and painting, and that he hoped to become self-employed in the field of interior decorating. (Tr. 190, 711, 756). In his Function Report, Plaintiff indicated that he took care of household chores including mowing, laundry, mopping, and cooking, and that he helps care for his disabled adult son. (Tr. 187-90). He also reported that he planned to travel to Texas by himself for a two week trip after his disability hearing. (Tr. 722). In summation, the Court's review shows there was substantial evidence in the record to support the ALJ's decision to assign little weight to Dr. Sparks' opinion.

Plaintiff also argues that the ALJ erred in discounting the opinion of Dr. David Volarich, who examined Plaintiff in August 2012, two months prior to the alleged disability onset date, in order to provide an Independent Medical Examination for purposes of a workers' compensation application. (Tr. 240). Dr. Volarich opined that Plaintiff should only occasionally lift no more than 25 pounds, that he should not lift any weight over his head, and should avoid remaining in a fixed position for more than 60 minutes at a time, and should change positions frequently. (Tr. 249-250). When a medical opinion is not from a treating source, the ALJ considers the following factors in determining the weight to be given to the opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009).

The ALJ gave Dr. Volarich's opinion "little weight," and stated that he did so because Dr. Volarich "is not a treating physician and he had little opportunity to examine the claimant . . .

[his] opinion was not consistent with objective medical evidence . . . [and] the opinion was rendered in 2010, prior to his alleged onset date." (Tr. 22). Plaintiff argues that the ALJ erred in giving little weight to Dr. Volarich's opinion because he was not a treating physician, when the ALJ had assigned great weight to the opinions of two other non-treating physicians who opined as to Plaintiff's mental condition. (Doc. 33 at 6). However, this argument ignores the fact that there were no opinions of record from a treating physician regarding Plaintiff's mental capabilities, and that the ALJ found those two opinions consistent with the record. Plaintiff also argues that the ALJ erred by not identifying what evidence in the record contradicted Dr. Volarich's opinion. However, this contention is refuted by a review of the ALJ's decision. The ALJ devoted nearly four pages to thoroughly considering and discussing Plaintiff's treatment history, the objective medical evidence, his functional restrictions, and activities of daily living, noting numerous examples of examination findings and other evidence that contradicted the opinions of both Dr. Volarich and Dr. Sparks. (Tr. 17-20). I discussed these inconsistencies at length when reviewing the ALJ's evaluation of Dr. Sparks' opinion, *supra*, and will not repeat that discussion here.

Plaintiff also argues that the ALJ erred in finding that Dr. Volarich's opinion was issued in 2010, when it was actually issued in 2012. Plaintiff is correct, as acknowledged by the Commissioner, that the opinion was issued in 2012. However, the opinion was still issued while Plaintiff was working full time, and prior to the alleged date of disability onset. (Tr. 22, 149, 241). Addtionally, the ALJ cited numerous other factors for discounting the opinion of Dr. Volarich, and the undersigned finds that the ALJ's misstatement constitutes harmless error. *See McIlvene v. Astrue,* No. 10-3481-CV-S-DGK-SSA, 2011 WL 4374542, at *4 (E.D. Mo. Sept. 19, 2011) (harmless error where mistake would not change ALJ's disability determination). The

Court concludes that the ALJ properly applied the factors for evaluating a consultative examiner's opinions, and the weight he assigned to Dr. Volarich's opinion is supported by substantial evidence in the record as a whole.

Plaintiff also argues that reversal is warranted because no medical opinion of record supports the ALJ's physical RFC determination, as the ALJ "rejected" the opinions of both Dr. Sparks and Dr. Volarich and then failed to order a consultative examination to correct this lack of direct opinion evidence. (Doc. 33 at 4). The Court disagrees. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). However, there is no requirement that an RFC finding be supported by a specific medical opinion. *See Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012). Furthermore, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox*, 495 F.3d at 619-20. Here, the ALJ, first of all, did not "reject" the opinions of Drs. Sparks and Volarich. He merely assigned "little weight" to them. (Tr. 22). *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (considering a physician's opinion and deciding to give "little weight" to it is not equivalent to rejecting the opinion). Thus, there were opinions of record as to Plaintiff's physical functional limitations, and the ALJ properly considered them and determined that they were inconsistent with the evidence in the record as a whole. As to the record as a whole, it contained extensive treatment records which provided more than adequate medical evidence of Plaintiff's ability to function in the workplace. (Exs. 11E, 2F, 4F, 6F, 7F, 8F, 9F, 10F, 11F, 12F, 13F, 16F, 17F, 19F, 21F, 22F). In the absence of other medical opinion evidence, "medical records prepared by the most relevant treating physicians [can] provide affirmative medical

evidence supporting the ALJ's residual functional capacity findings." *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011). The Court rejects the contention that the ALJ failed to adequately develop the record in this instance. With the medical record adequately developed, the ALJ was not required to order a consultative examination, and the failure to do so is not cause for reversal. *See KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 372-73 (8th Cir. 2016); 20 C.F.R. § 404.1519a(b); *see also Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (The ALJ is required to order further medical examinations only if the existing medical record does not provide sufficient evidence to determine whether the claimant is disabled).

### D. ALJ's Evaluation of Medical Opinions in Assessing Mental RFC

Plaintiff first argues that the ALJ committed reversible error when he failed to consider his GAF[4] scores, inasmuch as these scores indicate that he suffers from "serious symptoms." It is true that the ALJ did not address Plaintiff's GAF scores in his opinion. However, Plaintiff overstates the importance of GAF scores. The Eighth Circuit Court of Appeals has concluded that GAF scores have "little value" and the level of severity denoted by a GAF score does not correlate to the severity requirements under the Act. *See Nowling v. Colvin*, 813 F.3d 1110, 1115 n.3 (8th Cir. 2016) (citing *Jones v. Astrue*, 619 F.3d 963, 973-74 (8th Cir. 2010)) ("Moreover, the Commissioner has declined to endorse the [GAF] score for use in the Social Security and disability programs and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings."). Accordingly, a "litany of GAF scores in the 41-50 range, although indicating a serious problem with occupational functioning in

---

[4] The Global Assessment of Functioning Scale (GAF) is a psychological assessment tool wherein an examiner is to "[c]onsider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 32 (4th ed. 1994). A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, frequent shoplifting, obsessive rituals), OR any serious impairment in social or school functioning" DSM-IV 32. The Plaintiff was assigned a GAF score within that range on a few separate occasions during the relevant time period. (Tr. 613, 690, 751).

the DSM-IV sense, does not necessitate a finding of disabling limitations under the Act." *Doolittle v. Colvin*, No. 13-CV-04261-C-DGK-SSA, 2014 WL 7369635, at *2 (W.D. Mo. Dec. 29, 2014). Further, the current edition of the Diagnostic Statistical Manual of Mental Disorders abandoned the use of GAF scores because of, among other reasons, a "conceptual lack of clarity . . . and questionable psychometrics in routine practice." American Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013). While it perhaps would have been preferable for the ALJ to discuss these scores in his written decision, it does not constitute reversible error to have failed to do so. "[T]he failure to reference a Global Assessment of Functioning score is not, standing alone, sufficient ground to reverse a disability determination." *Jones*, 619 F.3d at 973 ("We are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place.") (citations omitted). Accordingly, the ALJ did not err in failing to give greater consideration to Plaintiff's GAF scores, and the GAF scores, in and of themselves, do not demonstrate that the ALJ's decision is not supported by substantial evidence in the record as a whole.

Plaintiff also argues that the ALJ erred in evaluating the medical source opinions in assessing his mental RFC. The ALJ found that Plaintiff retained the mental RFC necessary to perform a range of unskilled work limited to simple, routine tasks, with only occasional contact with the public and coworkers, and with only occasional changes in a routine work setting. (Tr. 17). In reaching this assessment, the ALJ afforded significant weight to the opinion of Dr. Mark Altomari, a non-examining state agency psychiatric consultant, finding it consistent with the record. State agency medical consultants are highly qualified experts in Social Security disability assessment, and the ALJ must consider their findings. 20 C.F.R. §§ 404.1527(f)(2)(i); *Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013). After reviewing the evidence of record,

Dr. Altomari opined on two separate occasions[5] that Plaintiff had mild mental limitations and no mental impairments that would significantly impact his ability to work. (Tr. 62, 549). Plaintiff argues that the ALJ erred in affording Dr. Altomari's opinions significant weight because the opinions were issued two or more years prior to the ALJ's March 2015 decision. (Doc. 33 at 10). Plaintiff alleges that Dr. Altomari did not have the benefit of reviewing the evidence of record submitted after that time, which he argues indicated more severe limitations than opined by Dr. Altomari. *Id.*

Plaintiff did submit additional evidence after Dr. Altomari reviewed the record, and that evidence indicated that there were occasions when Seavey experienced greater limitations than opined by Dr. Altomari, the most salient of which was one episode when Seavey went to the emergency room because he was experiencing suicidal thoughts. (Tr. 553-58). Although this was an episode of greater depression than the mild to moderate depression typically experienced by Plaintiff, the record indicates that it was a transient incident. The hospital charts from that visit indicate that Plaintiff reported feeling better quickly, that he was pleasant and cooperative throughout the visit, and by the next morning he denied any active suicidal ideation, and indicated that it had been an instance of "fleeting thoughts." (Tr. 557-58). Plaintiff was discharged from the hospital 14 hours after he was admitted with instructions to follow up with his own doctors. (Tr. 563). This episode appears to have been a one-time event, and does not indicate that Plaintiff's condition was materially different than it was during the time period reviewed by Dr. Altomari. Furthermore, at the hearing before the ALJ, Seavey testified that his condition had not changed during the two-and-a-half years prior to the date of the hearing. (Tr. 48). The hearing was held on March 3, 2015, and Dr. Altomari's most recent opinion was given

---

[5] Dr. Altomari issued one opinion on March 9, 2012, as part of Seavey's first application for disability benefits, and a second opinion on April 8, 2013, for use in Seavey's second application, which is the one at issue in this case. (Tr. 62, 549).

April 8, 2013, well within that two-and-a-half year time frame. Additionally, Plaintiff's treatment records from appointments with Dr. Sparks indicate that throughout the period in question, Plaintiff was consistently alert and oriented with normal attention, memory, concentration, and appropriate fund of knowledge. (Tr. 302, 294, 291, 645, 665, 670, 674, 676, 681, 767). Throughout this same period Plaintiff regularly reported that he was feeling well and not experiencing anxiety. (Tr. 293, 294, 290, 635, 629, 630, 623, 681, 675, 676, 673, 669, 670, 664, 665). In fact, only twice during this period did Plaintiff mention feeling notable stress, depression, or anxiety at his appointments with Dr. Sparks, and those visits were immediately after his trip to the emergency room. (Tr. 640, 642). The undersigned finds that the ALJ properly relied on Dr. Altomari's opinion because he is a qualified medical source, and his opinion is consistent with the medical evidence in the record as a whole.

Plaintiff also argues that it was reversible error for the ALJ to give significant weight to the opinion of Dr. Christopher Maglio, a consultative examiner who opined that Seavey may have difficulties getting along with superiors, but then fail to include that limitation in his RFC. (Doc. 33 at 10). Dr. Maglio's opinion stated that Plaintiff reported periodic impairment in social interactions that could indicate that he "may" have "minimal" difficulty getting along with peers or superiors. (Tr. 660). However, Dr. Maglio's opinion also stated that Plaintiff "denied having difficulties getting along with people." (Tr. 659). In the RFC, the ALJ acknowledged Plaintiff's mild difficulties with social interactions, and found that Plaintiff should have only occasional contact with the general public and coworkers. (Tr. 17). Plaintiff contends that the ALJ should have included a similar restriction on contact with superiors. However, an ALJ who specifically addresses the areas in which he found a limitation and is silent as to those areas in which no limitation is found is believed to have implicitly found no limitation in the latter. *See Depover*,

349 F.3d at 567-68. Having carefully reviewed the record, I believe the ALJ implicitly found that Plaintiff was not limited in this area. The record contains numerous instances in which Plaintiff denied having difficulty getting along with superiors, a self-assessment that was corroborated by the information provided by third parties. For example, in his Function Report, Plaintiff indicated that he does not have trouble getting along with others, and has no difficulty following instructions. (Tr. 191). In the Third Party Function Report provided by Plaintiff's friend MaLinda Crawford, she indicated that Plaintiff generally gets along well with others, and, more specifically, that he gets along "good" with authority figures such as police officers, bosses, or landlords. (Tr. 210). The record does not support a supervisor-related limitation in the RFC, and the ALJ did not err by omitting such a limitation.

Finally, Plaintiff asserts that the ALJ should have included functional limitations in his RFC to accommodate his alleged difficulties with reading and writing. Plaintiff argues that if the ALJ had done so, the jobs identified by the VE would have been eliminated. The ALJ noted that Plaintiff had a limited education,[6] and the RFC which the ALJ assigned to Plaintiff accommodated his intellectual functioning difficulties to the extent the ALJ found them credible, as he limited Plaintiff to simple, routine tasks, with only occasional changes in routine. (Tr. 17, 24). *See Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record."). There is substantial evidence in the record to support a conclusion that Plaintiff's allegations of serious difficulties with reading and writing were not credible. Dr. Altomari observed in 2012 that Plaintiff experienced no problem completing a daily activities form despite complaining of struggles with reading. (Tr. 551). Dr. Maglio

---

[6]  Mr. Seavey completed the eleventh grade (Tr. 218), and reported that he has problems with reading and writing. (Tr. 48).

observed in 2014 that Plaintiff had been able to follow simple written instructions without hesitation. (Tr. 660). Additionally, Plaintiff's friend Malinda Crawford, in her Third Party Function Report, indicated that one of Plaintiff's hobbies is reading, and that he does so "very well." (Tr. 209). Accordingly, the ALJ's finding that Plaintiff retained the mental RFC necessary to perform a range of unskilled work limited to simple, routine tasks, with only occasional contact with the public and coworkers, and with only occasional changes in a routine work setting is supported by substantial evidence in the record as a whole.

## V. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.


_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of March, 2018.